GREENWOOD et al. v. DOVER et al.†

(Circuit Court of Appeals, First Circuit. December 12, 1911.)

No. 880.

1. PATENTS (§ 114*)—SUIT IN EQUITY TO OBTAIN PATENT—BURDEN AND MEASURE OF PROOF.

The rule applied that in a suit under Rev. St. § 4915 (U. S. Comp. St. 1901, p. 3392), as amended, to obtain a patent which was awarded to the defendant by the Court of Appeals of the District of Columbia in interference proceedings, such decision must be given weight in the nature of a departmental decision, and, to overcome it, the evidence must be of such character, and sufficient at least to require a clear conviction that it was erroneous.

[Ed. Note.—For other cases, see Patents, Cent. Dig. § 166; Dec. Dig. § 114*]

2. PATENTS (§ 114*)—SUIT IN EQUITY TO OBTAIN PATENT—EVIDENCE CONSIDERED.

Evidence considered in a suit under Rev. St. § 4915 (U. S. Comp. St. 1901, p. 3392), as amended, to obtain the issuance of a patent to complainant, and *held* insufficient to overcome the presumption in favor of the decision of the Court of Appeals of the District of Columbia on an appeal in interference proceedings which awarded priority of invention to the defendant.

[Ed. Note.—For other cases, see Patents, Cent. Dig. § 166; Dec. Dig. § 114.*]

Appeal from the Circuit Court of the United States for the District of Rhode Island.

Suit in equity by George W. Dover and others against Thomas F. Greenwood and others. Decree for complainants and defendants appeal. Reversed.

For opinion below, see 177 Fed. 946.

See, also, 23 App. D. C. 251.

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

† Rehearing denied January 10, 1912.

Wilmarth H. Thurston, for appellants.

Alexander P. Browne (Horatio E. Bellows, on the brief), for appellees.

Before COLT and PUTNAM, Circuit Judges, and ALDRICH, District Judge.

PUTNAM, Circuit Judge. This is a proceeding under section 4915 of the Revised Statutes (U. S. Comp. St. 1901, p. 3392), amended as hereinafter set out. The section has been so fully stated or abstracted in the decisions to which we will refer that we do not deem it necessary to recite it here. We will describe the parties as Greenwood and Dover. The patent issued to Greenwood, and Dover filed a bill in equity under section 4915 in the Circuit Court, and there prevailed, and Greenwood appealed to us. Dover claims that the proceeding in the Circuit Court was in no way in the nature of an appeal, but an independent suit in equity, as to which proposition there is no doubt.

[1] This is the first proceeding properly on plea and proof as known where the common law prevails, which has occurred with reference to the patent in issue. The proposition is too plain to require discussion that there is no peculiarity as between this and any other independent suit in equity. By the very nature of the suit the proceeding is according to the usual and ordinary course of equity. Morgan v. Daniels, 153 U. S. 120, 14 Sup. Ct. 772, 38 L. Ed. 657, which will be referred to further, was based on the same section 4915, before it was amended, and is full of expressions to this effect. Although, by agreement of the parties, Morgan v. Daniels was submitted to the Circuit Court in part on the testimony used in the proceedings in the Patent Office, yet the opinion says that the suit there was "in the nature of a suit to set aside a judgment." Again it says:

"It is an application to the court to set aside the action of one of the executive departments of the government."

The opinion concludes at page 129 of 153 U. S., at page 775 of 14 Sup. Ct. (38 L. Ed. 657), as follows:

"There is other testimony on both sides of this controversy. It is unnecessary to notice it in detail. It is enough to say that the testimony as a whole is not of a character or sufficient to produce a clear conviction that the Patent Office made a mistake in awarding priority of the invention to the defendant; and because of that fact, and because of the rule that controls suits of this kind in the courts, * * * we remand the case with instructions to dismiss the bill."

Therefore any suggestion that any proceeding of the kind now before us, whether it includes the testimony used in the Patent Office or not, and whether it includes it with or without other testimony or not, is differentiated from an ordinary suit in equity, is immaterial.

The patent in controversy was issued on June 28, 1904, to Thomas F. Greenwood, assignor, on an application filed on February 1, 1902. There are several claims. The only ones to which we need refer to are 1, 2, and 3, reading as follows:

"1. A pin-tongue having one end bent over, said bent end being provided with a substantially cylindrical bore or aperture, and a pivot-pin secured in said bore or aperture by pressure.

"2. A pin-tongue having one end provided with a bend, and a pivot-pin secured in said bend solely by pressure.

"3. A pin-tongue having one end provided with a bend, and a pivot-pin secured in said bend by spring-pressure."

The apparent differences are that claim 1 ends with the words "by pressure," claim 2 with the words "solely by pressure," and claim 3, "by spring pressure." In either case the pin-tongue revolves through a part of a circle with what is called the pivot-pin, to which it is firmly secured by pressure, described in Claim 3 as "spring-pressure." The main purpose seems to have been to accomplish a simple and inexpensive contrivance, and the pith of the invention to secure the end of the pivot-pin around the pivot, or pindle, so that the pin and pindle would turn together, and so that the pin would be held in place by its resiliency alone, or what is called in the patent "spring-pressure."

Dover filed an application for the same invention on September 11, 1901, thus preceding by several months the date of Greenwood's application. On April 15, 1902, an interference was declared between Greenwood and Dover; and the Examiner of Interferences found in favor of Greenwood. On appeal to the board of examiners this was reversed, and its decision was sustained by the commissioner, who awarded priority to Dover. Thereupon an appeal was taken to the Court of Appeals of the District of Columbia, according to the following statutes:

Section 780 of the Revised Statutes of the District of Columbia, approved June 22, 1874, reads as follows:

"Sec. 780. The Supreme Court, sitting in banc, shall have jurisdiction of and shall hear and determine all appeals from the decisions of the Commissioner of Patents, in accordance with the provisions of sections forty-nine hundred and eleven to section forty-nine hundred and fifteen, inclusive, of chapter one, Title LX, of the Revised Statutes, 'Patents, Trade-Marks and Copy-Rights.'"

Section 9 of the act approved February 9, 1893 (chapter 74, 27 Stat. 434), reads as follows:

"Sec. 9. That the determination of appeals from the decision of the Commissioner of Patents, now vested in the general term of the Supreme Court of the District of Columbia, in pursuance of the provisions of section seven hundred and eighty of the Revised Statutes of the United States, relating to the District of Columbia, shall hereafter be and the same is hereby vested in the Court of Appeals created by this act; and in addition, any party aggrieved by a decision of the Commissioner of Patents in any interference case may appeal therefrom to said Court of Appeals." U. S. Comp. St. 1901, p. 3391.

The Revised Statutes of 1874 excluded from the jurisdiction of the Supreme Court of the District of Columbia the decisions of the commissioner in interference cases; but this jurisdiction was given to the Court of Appeals by the act of February 9, 1893, which we have just quoted. It never has been disputed that the proceeding as under section 4915 applies to interference cases which come up to the Court of Appeals of the District of Columbia equally with those pro-

ceedings which came up under the Revised Statutes of 1874 to the Supreme Court, from which interference cases were excluded. This must be conceded by Dover in the present case. Otherwise Dover would have been without remedy under that section, and the patent issued to Greenwood could not be disturbed on the present proceeding. This result is clearly involved in Re Hien, Petitioner, 166 U. S. 432, 439, 17 Sup. Ct. 624, 41 L. Ed. 1066, decided in April, 1897. It was evidently also involved in Prindle v. Brown, 155 Fed. 531, 84 C. C. A. 45, decided by us on August 2, 1907.

The opinion in the Court of Appeals for the District of Columbia is found in 23 App. D. C., at page 251, decided March 1, 1904. With reference to the effect of this decision, and with reference to the question of introducing any part of the record in the Patent Office to which it related, and with reference to all questions of that character, the views of the Circuit Court were clearly correct, and we need not go over them. Nevertheless, it will be permissible for us to refer to some expressions of the Court of Appeals, and also to the proceedings in the Patent Office, for the purpose of illustrating propositions which we may find it desirable to state.

It is to be regretted that Congress has not provided that decisions like that in the Court of Appeals in Greenwood v. Dover should be conclusive, in the same way in which any decisions of the superior courts of federal or state jurisdiction are ordinarily held to be effectual. While the proceedings in the Patent Office out of which this decision arose were not strictly in accordance with the practice either at law or in equity in the jurisdictions where the common law prevails, yet they have all the elements of the fundamental principles of the "law of the land," and might well have been pronounced by Congress to end the litigation accordingly, and thus to avoid the opportunity of further holding up of patents, and of leaving the rights of both the public and the patentee indecisive for another series of years. The entire proceeding contains the great elements required by the "law of the land," namely, opportunity for both parties to be heard, and finally a decision by a court of high authority, endowed with all the machinery of superior courts of judicature. As it is, however, we are compelled to accept in this single particular the view claimed by Dover, that the judgment of the Court of Appeals stands akin to a departmental decision, although no court could avoid the impression that in a certain sense and to a certain extent it is of greater weight. It is sufficient for us, however, to apply to this case the rule of Morgan v. Daniels, that there must be a clear conviction on this record that the conclusion of the Court of Appeals was erroneous. In saying this we need not trouble ourselves about the varying expressions of various courts with regard to analogous cases, some of which would even require Dover to maintain his position by proofs beyond a reasonable doubt. We are satisfied to reduce all such expressions to the one used in Morgan v. Daniels, to the extent that the record in this case should establish by a clear conviction that Dover is entitled to maintain his bill.

The conclusion in Morgan v. Daniels was not a peculiar outgrowth of the patent system. It was simply a phase of the general rules with reference to the determinations of the executive departments, where the statutes authorize them to investigate and decide questions of fact preliminary to a grant on which private rights are to rest. We need cite in this particular only the Maxwell Land Grant Case, 121 U. S. 325, 7 Sup. Ct. 1015, 30 L. Ed. 949, and United States v. Bell Telephone Company, 167 U. S. 224, 17 Sup. Ct. 809, 42 L. Ed. 144. The rule laid down in cases of the general class to which Morgan v. Daniels must be assigned is of so broad, far-reaching, and fundamental a character that none of the refined distinctions brought to our attention by Dover requires any particular further consideration. So that all that is left for us is to apply the general rule to the case in hand. Two or three decisons of the Supreme Court and of this court will guide us therein sufficiently.

[2] To meet the presumptions pro and con Dover has put in no new evidence except as follows: It appears that in the proceedings in the Patent Office he dated back his invention to July, 1901, or August 15, 1901. He explains that, according to Patent Office practice, he was bound by those dates, and equally so bound in the Court of Appeals for the District of Columbia; but that on the present proceeding he can go back to the earliest period which he can maintain on a reinvestigation of the facts, or otherwise, provided he brings himself within the general rules of law. This proposition we do not contest. He undertakes now to go back to March 15, 1901; and he has elaborated this date by calling George H. Tilford, who was examined at great length. He also called Arthur C. Brown, who went back to June 29, 1901. As to March 15, 1901, Dover testified to an interview with Tilford, and produced in court an envelope, which he and Tilford both identified as having been present there. This envelope was a printed circular, apparently in the nature of an advertisement from a patent solicitor at Washington. The date of the postmark is confused, so that it is impossible to decipher it accurately, although it seems to have been 1900. All which the witnesses Tilford and Dover relied on relating to it was some pencilling of a dislocated and obscure character. Part of it is claimed to represent the invention at issue here, but it is impossible on an inspection to clearly recognize it as such. Brown's testimony was not particularly supported. Dover also put in evidence his application, which, as we have said, antedates Greenwood's; but this has no new effect, because it was, of course, in evidence through all the departmental proceedings and in the Court of Appeals. On the other hand, the adverse party failed or was unable to call Greenwood. We cannot determine which was the fact, but it is not important that we should. They, however, called his wife and daughter, who fixed a date with reference to other important transactions as early as January, 1900, when, as they testified, Greenwood pinned the shirtwaists of both Mrs. Greenwood and Miss Greenwood with pins clearly containing the essential element of the invention in issue. This is proven by evidence as direct as a fact 10 years old can be proven by mere parol, which is, of course, subject

to question in various ways, some of which are pointed out by the learned judge of the Circuit Court; but all such testimony, whether of the witnesses Tilford and Dover on one side, and of Mrs. Greenwood and Miss Greenwood on the other side, are necessarily subject to infirmities and possible fraud, and therefore are to be cautiously received. A marked illustration of that fact appears in the present case, where Dover's testimony produced before us as to the interview to which the envelope described refers, in March, 1901, was given in almost the same order and the same language as the interview in August, 1901, between Dover and Greenwood as told by Dover, in accordance with the opinion of the Court of Appeals, already referred to. Changing the date, and changing Tilford for Greenwood, the two interviews were, as given, almost exactly the same, even to a general description of the pencil drawings on the paper involved in each. This, of course, is not in evidence in the present case; but we may properly refer to it as an illustration of the uncertainty of this class of proof, by whomsoever produced, as against an earlier departmental grant awarded after full investigation.

In like manner, we may refer, in further illustration, to the evidence of Greenwood now missing. If the respondent here was unable to produce Greenwood after the lapse of several years, it only leads to the importance of adhering to the rule of Morgan v. Daniels, ubi supra, because especially of the possible loss of important testimony during the lapse of a period extending over several years.

The general rule given as to this class of testimony is stated in Morgan v. Daniels, at page 129 of 153 U. S., at page 772 of 14 Sup. Ct. (38 L. Ed. 657), where an attempt was made to fix a time by reference to a particular conversation, and to rough sketches, with a comment by the court that it is not probable that, in the absence of some special reason therefor, the memory would carry for eight or nine years details of a plan or idea suggested in conversations and illustrated by sketches such as the court described. The opinion adds that such testimony is not of a character to carry great weight.

In Brooks v. Sacks, opinion passed down by us on June 10, 1897, 81 Fed. 403, 26 C. C. A. 456, the classes of new evidence produced on this bill pro and con, with reference to satisfying the demand for a clear conviction as against a departmental adjudication such as we have here, are carefully analyzed and valued. In that case there were two patents for the same invention, and the issue was simply one of priority as between them. As to one patent there was an admission of a date of invention earlier than the date of the application; and, of course, the presumption in favor of that patent went back to the admitted date, and to anticipate that date required the same weight of evidence as it would to anticipate the date of the application. Therefore, although the circumstances are different, the conclusions there are a guide for us here. There, there were certain drawings, as at bar, and also some testimony fixing the date as claimed by the contesting patentee. It was admitted that the illustrations might well have included the device in controversy, and there were some other suggestions tending to strengthen the case of the contestant. Our conclu-

sion is given on page 407 of 81 Fed., on page 459 of 26 C. C. A., as follows:

"On the whole, we must apply to this case the practical safeguards against the frequently mistaken memory of witnesses as to events of this character long since happening, which the courts are always insisting on with reference to the issue of anticipation. Doing this, it seems plain that the complainant below has come far short of proving his prior right as satisfactorily as required by the authorities and by the reason of the case. Indeed, in view of the absolute lack of illustrations, book entries, purchasers, bills, patterns, or castings of the early date in dispute, we are safe in saying that the preponderance of probabilities is against him."

Westinghouse Company v. Stanley, decided by us on December 9, 1904, 133 Fed. 167, 179, 68 C. C. A. 523, was peculiar. On first sight it might be considered as contravening Brooks v. Sacks, but Brooks v. Sacks was cited and approved. The distinction grew out of the fact that the crucial date was fixed by the record of the solicitor, who had been continuously employed during the entire controversy; so that, inasmuch as he had a continuous interest in the device from the beginning, and a continuous record in reference thereto, his testimony was accepted.

Applying, therefore, the rules which we have cited, in accordance with the light which we receive with regard to their practical application from these decisions, it is plain that Dover has failed to meet the presumption against him arising from the decision of the Court of Appeals of the District of Columbia; and, indeed, it might be said that this record as an independent record is more against him than for him.

The decree of the Circuit Court is reversed; and the case is remanded to that court with directions to dismiss the bill, with costs for the respondents in that court and on appeal.

ALDRICH, District Judge. I fully concur in the result of the foregoing opinion, but should prefer to see the decision in this case based distinctly upon the theory that the remedy by bill in equity provided by section 4915, when sought in a situation involving intervention rights, and a decision by the Court of Appeals of the District of Columbia, a court having appellate jurisdiction over certain intervention patent rights and proceedings, should be administered according to the due and ordinary course of equity practice and procedure; and upon the idea, where questions of fact have been determined and established by such a court of competent jurisdiction, in an inter partes case, that the results of the decision will not be overthrown except upon such grounds as relief is granted from judgments at law and decrees in equity, under the broad sense in which equity and common-law jurisdictions are understood in this country and in England.

While it was doubtless intended to provide an independent proceeding in equity, under the well-understood historical view and the thousands of judicial interpretations which accept the law and equity terms in the Constitution, the judiciary act, and other enactments of Congress with reference to law and equity proceedings as meaning

the usual course of law and equity as administered in this country and in England, it cannot be possible that Congress intended to enlarge the general rules governing equitable remedy, to the end that relief should result, in a trial de novo, whenever a different court under another view as to the measure of proofs, or upon another view as to the weight of evidence, or upon a little more evidence, shall reach a different conclusion as to facts already judicially established by a court of competent jurisdiction in an inter partes case, rather than from the usual grounds upon which equitable relief is afforded when former judicial determinations are involved.

On the contrary, Congress in providing remedy in patent cases by bill in equity on notice to adverse parties and upon "other due proceedings" must have intended proceedings in the ordinary course of equity, and that would mean, when applied to a case like this, that final results once reached by a court of competent jurisdiction over subject-matter and parties will not be disturbed in an equity proceeding between the same parties, except upon a bill which states a case for equitable relief and a case so clear upon the evidence as to show that the results were promoted by fraud, accident, or mistake. Such a construction of section 4915 would place an inventor's rights in respect to equitable relief from judicial determinations upon the same basis as general property rights which general rules of equity safeguard only against fraud, accident, or mistake.

The strong language of Morgan v. Daniels, 153 U. S. 120, 14 Sup. Ct. 772, 38 L. Ed. 657, had reference to a decision of the Patent Office, an executive branch of the government, having limited authority to pass upon special facts, and not to the more solemn decision of a court having full jurisdiction on appeal over facts in controversy.

I think, however, that the result of the logic and reasoning of Morgan v. Daniels, though having reference to a decision of the Patent Office, in an executive branch of the government, rather than to a judicial determination, when applied to a case of judicial determination like the one by the Court of Appeals for the District of Columbia, would mean the rule which I have stated, because in the closing paragraph of Mr. Justice Brewer's opinion it is stated that the testimony was not sufficient to produce a clear conviction that the Patent Office made a mistake.