CRONE v. JOHN J. GIBSON CO.

(District Court, W. D. New York.   July 21, 1915.   On Rehearing and Reargument, October 25, 1916.)

1. PATENTS ⬡⬡112(4)—SUIT FOR INFRINGEMENT—EVIDENCE OF ANTICIPATION —INTERFERENCE PROCEEDINGS.

In a suit for infringement against one not a party nor in privity with the parties to an interference proceeding in the Patent Office, wherein it is sought to antedate the patent to which priority was awarded, certified copies of Patent Office decisions or examiner's opinions as to the facts adduced in the interference proceeding, if admissible at all, are so only in support of independent ·evidence to establish prior invention.

[Ed. Note.—For other cases, see Patents, Cent. Dig. § 165; Dec. Dig. ⬡⬡112(4).]

2. PATENTS ⬡⬡112(4)—SUIT FOR INFRINGEMENT—PRIORITY OF INVENTION— BURDEN OF PROOF.

While the burden of proof rests in the first instance on the defendant in an infringement suit to establish prior invention by another, when a certified copy of a prior patent is introduced, it is presumptive evidence that the patentee was the original inventor of the device described therein, and that it was completed at the time the application for the patent was filed, and the burden is shifted to the complainant to establish to the satisfaction of the court a still earlier date of invention.

[Ed. Note.—For other cases, see Patents, Cent. Dig. § 165; Dec. Dec. ⬡⬡112(4).]

On Rehearing and Reargument.

3. PATENTS ⬡⬡328—ANTICIPATION—STARTING DEVICE FOR GAS ENGINES.

The Baldwin patent, No. 1,009,011, for a starting device for gas engines, the function of which is to prime the cylinders in gasoline engines to facilitate the starting of the engine when cranked, held not anticipated, valid, and infringed.

4. PATENTS ⬡⬡58—SUIT FOR INFRINGEMENT—PROOF OF ANTICIPATION.

The burden rests on the defendant in an infringement suit to establish anticipation by cogent evidence, such as leaves no reasonable doubt 'in the mind of the court.

[Ed. Note.—For other cases, see Patents, Cent. Dig. § 75; Dec. Dig. ⬡⬡58.]

In Equity.   Suit by Francis G. Crone against the John J. Gibson Company.   On final hearing.   Decree for complainant.

J. Wm. Ellis, of Buffalo, N. Y., for complainant.

Josiah McRoberts, of Chicago, Ill., and Clifford Nichols, of Buffalo, N. Y., for defendant.

⬡⬡For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

HAZEL, District Judge. In this action for infringement are involved claims 1 to 8, inclusive, of patent No. 1,009,011, issued to Dayton Baldwin November 14, 1911, for a starting device for gas engines. Such engines are of the internal combustion type, requiring a certain amount of combustible mixture or fuel in the engine cylinder, so that the operation of the piston will cause the mixture to explode or ignite to start the engine. The art recognizes three types of internal combustion engines: The gas engine, by which the combustible material is caused to reach the cylinder without being first vaporized; the gasoline engine, which is a gas engine proper, having added thereto a carbureter and using only gasoline or naphtha as fuel; and the oil engine, which is of special design, and which uses a vaporizer and external heat as a power agency.

Complainant's device has been designed particularly for use on automobiles, and the specification says:

"Sometimes it is very difficult to start or crank a gas engine when the same is cold, or after it has been standing for a long time. This is usually occasioned by failure to get the proper amount of gasoline into the cylinders, or to get the gasoline properly vaporized. To overcome this objection I extend a branch pipe line from the supply and connect the same to a spray nozzle in the intake pipe, and arrange a forcing device, such as a pump, in this branch line. Then, when it is desired to prime or start the engine, the valve is opened and the pump is worked to force gasoline in the form of spray into the intake pipe. As there is usually plenty of air in the cylinders and intake pipe, the next crank or so of the engine will draw a proper mixture into the cylinders and compress the same, whereby the motor will be easily started."

The function of the patent in suit is to prime the cylinders to facilitate the starting of the engine when cranked, either manually or by electric or pneumatic means. The first claim is typical of the others, and reads as follows:

"1. The combination of a gas engine, a carbureter, an intake pipe extending from the carbureter to the gas engine, a gasoline supply, a pipe connecting therefrom to the carbureter, a branch pipe line extending from the supply and connected to the intake pipe, and means for forcing gasoline through the branch pipe into the intake."

The other claims are specific, with the exception of the eighth claim, which is broad, and specifies no forcing means through the branch pipe to the intake. The element of novelty consists in the combination of parts by which a branch pipe is extended from the supply pipe to the intake pipe of the engine, and a forcing means, or pump, adapted in the branch line. The device, though simple, has by its usefulness justified its existence.

The defendant pleads anticipation and prior use. Although a number of prior patents for priming engine cylinders were introduced in evidence, the defendant's expert witness indicated that the Steele patent, No. 992,920, of May 23, 1911, filing date November 25, 1907, the Maxwell patent, No. 878,888, of February 11, 1908, the Robinson patent No. 565,033, of August 4, 1896, the Baverey patent, No. 907,953, and the Coleman patent, No. 867,797, are principally entitled to consideration on the questions of anticipation and limitation of the claims in controversy. On comparing the claims in suit with the Robinson patent, it will be observed that the latter uses no carbureter, but in-

stead has a receptacle within the engine cylinder wherein the air and combustible liquid are combined for vaporization and ignition. No intake pipe extending from a carbureter to the gas engine is shown, although there is a branch pipe line, without, however, any connections for pumping or forcing the oil through. The evident object of the patentee was to position the fuel chamber in the automobile high enough to permit the fuel to flow to the engine cylinder by gravity, first through pipe *12*, thence to a heating jacket where the fluid is vaporized. Obviously such a construction did not suggest the patent in suit. Robinson may have designed to adapt his construction to perform the functions of the Baldwin construction; but, as it did not embody the essential features of the claim in suit, his patent is not of controlling importance as an anticipation.

In the Maxwell patent, issued but a week or so before Baldwin's application in suit was filed, there are no means for forcing the liquid fuel into the engine or intake pipe. The pump there used forces air into the float chamber of the carbureter; that is, it overflows the carbureter, which results in sucking the liquid into the cylinder by the stroke of the piston. There are no means for priming the engine by forcing the liquid into the intake pipe of the engine; indeed, the fuel is drawn directly through the cylinder from an auxiliary tank, instead of from the main supply, as in complainant's device, and when it is ignited the engine will start without cranking. I think the functions of the Maxwell device and its mode of operation are materially different from those of the Baldwin device, and that therefore the Maxwell patent is not anticipatory.

In the Riotte patents, to which defendant attaches importance, there is a contrivance in which a pump is located in the carbureter and connected up with the float chamber and mixing chambers, while the gasoline is sucked through the jet nozzle, but there is no branch line extending from the gasoline supply to the intake pipe of the engine as in complainant's patent. The combination of elements in suit is not shown, as by the arrangement of pipe lines from the gasoline tank to the float chambers of the carbureter the fuel is introduced into the carbureter through the jet nozzle, which also introduces the fuel to the air supply of the engine. There are no pipes through which gasoline may be drawn to the intake pipe at a point where it branches off to a plurality of cylinders.

Other prior patents are emphasized in the briefs, to anticipate the Baldwin patent; but, in view of the fact that I consider the Steele patent an anticipation, they need not be here considered. I have referred briefly to the Robinson, Maxwell, and Riotte patents, because of the importance attached to them at the hearing. The complainant frankly admits in the brief filed by him that:

"The disclosure of Steele is substantially the same as the disclosure of Baldwin, and if there was no evidence before this court, except the evidence of the filing dates of the applications of Baldwin and Steele, Steele should be declared to be the first inventor of the patented device in suit."

Under the defense of noninvention the defendant has the right to show prior invention by prior patenting, or by disclosure in some

printed publication of the alleged invention set forth in the specification; and pursuant to the filed stipulation of the parties to the litigation the Patent Office copy of the Steele patent was rightly offered in evidence to establish prima facie the filing date of the Steele application as the date of the invention. The defendant has also introduced in evidence a certified copy of Steele's application as originally filed in the Patent Office, from which it plainly appears that his application was filed November 25, 1907, several months before the Baldwin application. To contradict such evidence, the plaintiff in rebuttal offered a copy of a decision by the examiner of interferences in an interference proceeding between Baldwin and Steele, which was tentatively received. In such decision it is stated that the evidence in the interference proceeding was sufficient to prove that Baldwin constructed an operative starting device embodying the features of his invention during the fall of 1907; that it became practicable some time in October, 1907; and priority of invention of the subject-matter was therefore awarded to him.

[1] The defendant concededly was not a party or privy to the interference proceeding. Had he been involved therein, the said judgment or decree of priority of invention would no doubt, in the absence of convincing evidence to the contrary, have been controlling evidence on that point. But in an action for infringement against another person not in privity with the parties to the interference, wherein it is sought to antedate the patent to which priority was awarded for the express purpose of avoiding anticipation, a different rule is thought to apply. In such a case, if certified copies of Patent Office decisions or examiner's opinions as to the facts adduced in the interference proceedings are admissible at all, they are so only in support of independent evidence to establish prior invention.

The complainant has cited several authorities to support the contention that the Patent Office decision shifted the burden of proof onto the defendant, but according to my interpretation of them they relate to actions between the same parties or their privies as were parties to the Patent Office controversy. The proper rule to apply to the facts here is inferable from the rule enunciated by the Supreme Court of the United States in Morgan v. Daniels, 153 U. S. 120, 14 Sup. Ct. 772, 38 L. Ed. 657, which was an action to obtain the reissue of a patent to a defeated party in an interference proceeding. It was there substantially stated that decisions of the Patent Office relating to priority of invention must be accepted as controlling upon that point in any subsequent action between the same parties, unless the evidence negativing such showing "carries thorough conviction." This would seem to expressly limit the effect of testimony adduced in interference proceedings, to parties and their privies.

[2] In Day v. Combination Rubber Co. et al. (C. C.) 2 Fed. 570, the defendant sought to impeach the prima facie effect of a patent by producing copies of opinions in prior cases showing that MacDonald's invention was prior to that of De Forest, and Judge Wheeler said generally that it was elemental that in order for judgments and decrees to be evidence of facts, or evidence at all, in other proceedings the

same parties or their privies must be concerned. In Westinghouse Electric & Mfg. Co. v. Catskill Illuminating & Power Co., 121 Fed. 831, 58 C. C. A. 167, the Circuit Court of Appeals for this circuit held that certain Tesla patents were anticipated by a prior printed publication of a lecture describing the invention, and quoted from Westinghouse Elec. & Mfg. Co. v. Saranac Lake Elec. Light Co. (C. C.) 108 Fed. 221, that:

"The burden which rested upon the defendant in the first instance had been transferred to the complainant, and it must furnish the court with convincing proof that the anticipation has been anticipated."

In the case at bar the prior Steele patent raised a presumption that Steele was the original inventor of the priming device described in his patent, and that it was completed at the time the application for a patent was filed. The burden of proving priority of invention, it is true, was at the outset upon the defendant; but when a certified copy of the Steele patent was introduced in evidence the burden was shifted to the complainant to establish to the satisfaction of the court a still earlier date of invention by the patentee in suit. Consolidated Ry. Elec. Lighting & Equipment Co. v. Adams & Westlake Co., 161 Fed. 343, 88 C. C. A. 355; Westinghouse Elec. & Mfg. Co. v. Saranac Lake Elec. Light Co., supra; Westinghouse Elec. & Mfg. Co. v. Mutual Life Ins. Co. (C. C.) 129 Fed. 213 and cases cited; St. Paul Plow Works v. Starling, 140 U. S. 184, 11 Sup. Ct. 803, 35 L. Ed. 404. As the defendant in this case was not represented before the Patent Office in the interference between Steele and Baldwin, and as it does not manufacture its priming or starting device under the Steele patent, such proof must necessarily be made by competent primary evidence and according to the principles and procedure of equity jurisprudence. Dover v. Greenwood (C. C.) 154 Fed. 854, affirmed 194 Fed. 91, 114 C. C. A. 169.

In Ecaubert v. Appleton et al., 67 Fed. 917, 15 C. C. A. 73, there was introduced in evidence testimony in interference proceedings, together with the opinion of the Commissioner of Patents, and Judge Shipman, writing for the Circuit Court of Appeals, held that such testimony was irrelevant, and that the suit was an independent one, although between the same parties as the interference proceeding. It is true, the opinion states that the judgment or decree in the interference proceedings would have been admissible, but obviously this applied to actions between the same parties. In Dickerson et al. v. De La Vergne Refrigerating Mach. Co. (C. C.) 35 Fed. 143, Judge Lacombe, on an application for a preliminary injunction wherein an interference decision was urged against a third party, said:

"An examination of these decisions shows that the courts have heretofore been cautious in accepting the decisions of the patent office in interferences. Their effect is strictly confined to parties and privies."

In Westinghouse Electric & Mfg. Co. v. Roberts et al. (C. C.) 125 Fed. 6, interference proceedings were introduced in evidence establishing the patentee's right to priority, and the court said:

"It is evident, upon the most cursory consideration, that, as against the defendants, the complainants are entitled neither to the result nor the evidence

by which it was obtained," and, the controversy being between parties with whom the defendants were not in privity, "they cannot, therefore, be affected thereby."

Dover v. Greenwood, supra, was suit between the parties to a previous interference proceeding, and Judge Brown held therein that testimony taken in interference proceedings is inadmissible unless a foundation is first laid for secondary evidence, and he cited, on this point, Weeks on Law of Depositions, § 6, and Wigmore on Evidence, §§ 1402, 1414, and 1415. On appeal to the Circuit Court of Appeals, 194 Fed. 91, 114 C. C. A. 169, Judge Putnam in the opinion expressly approved the decision of the lower court with reference to introducing any part of the record in the Patent Office to which it related, and took occasion to say:

"It is to be regretted that Congress has not provided that decisions like that in the Court of Appeals in Greenwood v. Dover should be conclusive, in the same way in which any decisions of the superior courts of federal or state jurisdiction are ordinarily held to be effectual. While the proceedings in the Patent Office out of which this decision arose were not strictly in accordance with the practice either at law or in equity in the jurisdictions where the common law prevails, yet they have all the elements of the fundamental principles of the 'law of the land,' and might well have been pronounced by Congress to end the litigation accordingly, and thus to avoid the opportunity of further holding up of patents, and of leaving the rights of both the public and the patentee indecisive for another series of years."

In Edward Barr Co., Ltd., v. New York & New Haven Automatic Sprinkler Co. (C. C.) 32 Fed. 79, Judge Lacombe, considering the question of the presumption of validity, which I conceive is analogous to a presumption of priority, arising from interference proceedings, said that such presumption applied only to parties to the action and their privies and that it did not extend to litigants who were not making the infringing article under a grant from a party to the interference proceeding.

The defendant's right, therefore, to urge the Steele patent as anticipatory, is not defeated merely by a decree of the Patent Office in proceedings to which the defendant was a stranger; but, as heretofore stated, this case must be decided upon the merits. See Western Electric Co. v. Williams Abbott Electric Co. (C. C.) 83 Fed. 842, which held that an interference proceeding raised a presumption of the validity of the patent only against the parties thereto and their privies.

Complainant, however, places reliance upon Pac. Cable Ry. Co. v. Butte City St. Ry. Co. (C. C.) 52 Fed. 863, which I have carefully considered. There, however, the court considered, not only the decision of the Commissioner of Patents, but also the evidence in the interference proceeding between the patentee therein and one Patterson. The statement of facts conveys the impression that there was also additional uncontradicted evidence from which it appeared that the invention had been put in practice in San Francisco prior to the issuance of the alleged anticipatory patent. The learned court quoted from Walker on Patents that:

"The decision of the Commissioner is prima facie evidence in favor of the patent last granted, because, it is said, he would not have granted it if he had not decided it entitled to priority in point of date of invention."

But, on reading sections 317 and 318, from which this excerpt is taken, it will be observed that they relate to the subject of interfering patents, and that the quoted portion seems to have special reference to interference decisions between parties who afterwards become parties to actions in equity. Nor does John R. Williams v. Miller, Du Brul & Peters Mfg. Co. (C. C.) 107 Fed. 290, by intendment deviate from the broad rule expressed in Morgan v. Daniels, supra, although on first reading the decision would seem to support the view of counsel for complainant. Such facts as are stated in the opinion show that Williams was in interference with Hammerstein, and that the latter was awarded priority; but the invention described in the Hammerstein patent was expressly disclaimed, and such disclaimer, of course, precluded him from afterwards asserting that his invention was prior. Complainant contends that, as Steele was subsequently restricted to a single claim, which is slightly different, he must be deemed to have disclaimed the broad invention; but there is no such disclaimer indicated as will bring this case under the doctrine of the case last considered or convince the court that Steele did not claim to be the inventor of the particular matter in issue.

There was evidence on behalf of defendant, to support the defense of prior use, that as early as 1904 a priming device, consisting of priming cups mounted on the cylinders and mounted on the dash with valve control discharge pipes leading to the intake, was used, and that later, in 1906, a pump was added, which, however, pumped lubricating oil to the engine; but such testimony requires no examination, in view of the conclusion I have reached on the present record that Baldwin was not the prior inventor of the starting device for gas engines described in the specification and claims in suit, that the presumption of prior invention by Steele arising from the earlier date of the Steele application has not been overcome, and that the decision of the examiner of interferences, determining that Baldwin was such prior inventor, is incompetent and irrelevant, and must therefore be disregarded.

A decree dismissing the bill may accordingly be entered.

## On Rehearing and Reargument.

[3] In the prior opinion herein, it was held that the Robinson, Maxwell, and Riotte patents failed to disclose the Baldwin combination in suit, but that the Steele patent was anticipatory, unless Baldwin could be proven to be the original inventor. To establish priority of invention over Steele, whose application was filed November 25, 1907, the complainant relied solely upon the decision of the examiner of interferences awarding priority of invention to Baldwin in an interference proceeding in the Patent Office between Steele and Baldwin. As the defendant was not a party or privy to the interference proceeding, the decision of the examiner was disregarded by me, and the Steele patent was held to anticipate the patent in suit. Complainant afterwards applied for leave to introduce further testimony to establish priority of invention by Baldwin, which was granted, the evidence being taken de bene esse, and the case is again before me for consideration.

A number of witnesses have sworn that Baldwin actually completed his invention during the summer of 1907, and that the priming device in question was successfully used on an automobile during the summer and autumn, prior to November, 1907. These witnesses, in the main, had previously given testimony in the interference proceeding pending in the Patent Office, and it was upon their testimony that the decision awarding priority of invention to Baldwin, was based. After carefully reading such testimony I have become satisfied that it is entitled to weight, as it is quite improbable that the recollection of all the witnesses could be at fault as to the time of year when the device was completed and operated. It is unnecessary to narrate the testimony in detail. Taking it in its entirety, I am convinced of complainant's right to antedate the Baldwin patent to November 1, 1907, prior to the filing date of the Steele application.

In the interference proceeding the oral testimony of Dr. Holden was corroborated by a book of entries of appointments with patients, which has since been lost, and which, after diligent search, cannot be found. Nevertheless, as the appointment book was previously considered in the interference proceeding, the presumption is strong that proper weight was there given it, and failure to produce the same on this trial does not weaken the force of the examiner's decision, nor affect its correctness. In these circumstances, proof beyond a reasonable doubt is not required; it is sufficient that it is clear, convincing, and satisfactory. Drum v. Turner, 219 Fed. 188, 135 C. C. A. 74, and cases cited.

But, aside from this, complainant insists that Steele, in accepting a narrow claim, disclaimed Baldwin's broad invention, and that such disclaimer binds both him and third persons. Upon this phase it may be said that his failure to dispute Baldwin's claim to priority certainly supports the presumption that he believed he was entitled simply to a specific claim for a particular form of device for practicing the fundamental invention, and, thus considered, the Steele patent is not anticipatory.

I come now to a consideration of the additional patents which defendant asserts anticipated the Baldwin patent, and to which no reference was made in the prior opinion. Whatever novelty there is in the Baldwin patent concededly resides in the priming device, consisting of the inlet pipe *11,* extending from the gasoline supply to the priming pump, and the discharge pipe or branch pipe *12,* extending from the pump to the intake. By this arrangement, complainant claims, the priming device, because of its connection with the intake at a point between the engine and carbureter, was caused to act independently of the supply pipe or carbureter.

Does the McCadden patent of April 12, 1904, disclose such a pipe system for gasoline engine primers? Although it is a close reference, complainant has successfully distinguished it. McCadden missed success because he connected the priming device directly to the carbureter, making it in a sense dependent thereon in priming the cylinder, instead of independent thereof, as did Baldwin. In complainant's brief this distinction is thus emphasized:

CRONE V. JOHN J. GIBSON CO.

"If the engine suction in this device fails to pull the valve $i$ from its seat, there could be no pull on the nipple $r$, nor through the connection $r'$, for the chamber $C$ would then be a *closed pocket* with no access to the air; then the primer would not function, nor would the engine run. The sticking of a valve, such as that marked $i$, would be quite probable. The priming function is, therefore, entirely dependent upon the proper operation of the carbureter. Baldwin's primer is so constructed that it will work, whether the carbureter works or not, and if the carbureter does not work the engine can run with the primer alone."

Defendant denies that the McCadden device operates in this manner, and argues that the dependence or independence of the primer on the carbureter is determined by the character of the fuel supply, and not by the point of its discharge; but the McCadden drawing shows that the patentee intended to prime the engine through a pipe dependent upon the carbureter, as the pipe connection from the supply to the carbureter, or branch pipe to the cylinder, indicates, while in Baldwin's construction the inlet pipe from the supply tank to the carbureter and branch pipe from the pump to the intake show a method of priming regardless of the carbureter. The latter adaptation has gone into extensive use on automobiles, while McCadden's, if in practical use at all, was certainly not preferred by defendant. In comparing the drawings of the two structures it will be observed that McCadden has omitted the intake pipe extending from the carbureter to the gas engine, and uses instead a connecting means $r'$, passing to the cylinder. He has no branches from the intake to the cylinder, no pipe from the supply to the carbureter, and no pipe from the supply to the intake that branches to the cylinder. These specified variations were not simply a "matter of mechanical choice" according to the form of engine employed, as claimed by defendant, but were elements substantially contributing towards success or failure. What has been said to distinguish the McCadden patent from the Baldwin device applies equally to the prior Gaskill patent and other prior patents cited by the defendant as anticipatory, and to which reference was not made in the prior opinion.

Baldwin's method of extending the branch priming pipes to the supply pipe and connecting thereto a pipe running to the carbureter and branching to the intake pipe to produce a primer independent of the carbureter, was not "an expedient obvious to an intelligent mechanic." While the invention, in view of later priming devices, may be regarded as of minor importance, the proofs show that before Baldwin's invention there was annoying difficulty in starting or cranking gas engines of automobiles, especially after they had stood for a while in the cold, and that such difficulty was generally due to inability to get the right quantity of gasoline into the cylinder, or to get it properly vaporized. This difficulty Baldwin overcame.

There are prior patents containing some of the elements of the Baldwin invention, but the combination is new and novel. In the Gaskill patent there is a gasoline engine, supply pipe, branch pipes to the intake, etc., but no carbureter. Baldwin's device was clearly limited to a priming device used in connection with a gas engine provided with a carbureter. Gaskill uses a hand pump for drawing the liquid gaso-

line from the supply tank to the cylinder; but, as he does not have a carbureter in connection with his engine, it is doubtful if the hand pump was feasible for forcing gasoline vapor into an engine cylinder.

[4] The essentially novel feature of the Baldwin patent, as heretofore, indicated, is the adaptation of means to prime the engine by drawing the priming charge directly from the supply, thus securing priming independently of the carbureter; while in prior structures the engine was primed by first priming the carbureter. The burden rested upon the defendant to point out a clear anticipation and to prove its anticipatory character by cogent evidence, such as leaves no reasonable doubt in the mind of the court. Underwood Typewriter Co. v. Elliott-Fisher Co. (C. C.) 165 Fed. 927; Seymour v. Osborne, 11 Wall. 516, 20 L. Ed. 33. Utility is sufficiently established by the fact that the patent has been infringed by the defendant which in its commercial structures utilizes every element of the claims in controversy. Lehnbeuter v. Holthaus, 105 U. S. 94, 26 L. Ed. 939.

Complainant may have a decree, with costs.