### COLUMBUS DENTAL MFG. CO. v. IDEAL INTERCHANGEABLE TOOTH CO., Inc..

(Circuit Court of Appeals, First Circuit. January 2, 1924.)

No. 1638.

I. Patents ⊛58—Presumption prior patent anticipated plaintiff's patent.

In suit for infringement of patent, where patent was issued to a third person for a similar device a year and a half before plaintiff's patent was applied for, the presumption is that the former patent anticipates the

⊛For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

plaintiff's patent and casts on plaintiff the burden of showing that its device was not only conceived, but represented in some physical form, prior to the time of the other person's application.

2. Patents ☞58—Oral testimony held inadequate to overcome presumption of anticipation.

In suit for infringement of patent, where it appeared that another had patent issued before plaintiff's patent was applied for, oral testimony, given after the lapse of more than 14 years, *held* inadequate to overcome presumption that first issued patent anticipated plaintiff's patent.

3. Patents ☞328—Steele patent, No. 997,472, held invalid.

Steele patent, No. 997,472, claims 1 and 2, for an improvement in an artificial tooth or cuspid, *held* invalid.

Appeal from the District Court of the United States for the District of Massachusetts; James M. Morton, Judge.

Suit in equity by the Columbus Dental Manufacturing Company against the Ideal Interchangeable Tooth Company, Inc. Decree for defendant (282 Fed. 896), and plaintiff appeals. Affirmed.

Frederick L. Emery, of Boston, Mass. (Edwin S. Clarkson, of Washington, D. C., and Everett S. Emery, of Boston Mass., on the brief), for appellant.

Odin Roberts, of Boston, Mass. (Robert Cushman, Charles D. Woodberry, and Roberts, Roberts & Cushman, all of Boston, Mass., on the brief), for appellee.

Before BINGHAM, JOHNSON, and ANDERSON, Circuit Judges.

BINGHAM, Circuit Judge. The plaintiff, the Columbus Dental Manufacturing Company, an Ohio corporation, is the owner of United States letters patent No. 997,472, issued to it July 11, 1911, on application of Thomas Steele, filed June 13, 1910, and complains of its infringement by the defendant, the Ideal Interchangeable Tooth Company, Inc., a Massachusetts corporation, which has an established place of business at Boston, where the alleged acts of infringement were committed.

The patent is for an improvement in an artificial tooth or cuspid. The defenses are invalidity and noninfringement. In the District Court the patent was held invalid for want of invention and the case was dismissed.

The object of the invention is to provide an artificial tooth so formed as to be interchangeable and capable of replacement upon a metal base attached to a bridge. The bridge is made of metal and furnishes support for the tooth and its metal base. It is anchored at its ends to the natural teeth at either side of the space that is to be filled. The bridge proper usually comprises a series of metal plates, to each of which a tooth is attached; the plates being joined to the bridge by soldering. The teeth are made of porcelain and the interchangeable or removable character given to them is important, for if a tooth breaks it may be replaced without removing the bridge, and the metal backs may be soldered to the bridge proper without causing damage which the heat employed might otherwise occasion. It is

desirable in these teeth that the attaching means be such as to secure accuracy of alignment and setting, and that they be sufficiently strong to withstand the operation of biting or masticating, and also of such a nature and so located as not to impair the requisite strength of the tooth while performing either operation.

It is claimed that the problem of providing front teeth that are interchangeable differs from that presented in the case of back teeth; that front teeth are used for biting, not grinding; that the back teeth perform the act of mastication, when substantially closed, by a slipping or sidewise motion; and that it is this sidewise motion and the difference in the shape of the back teeth that cause the difference in the problem. But, in the view we take of the case, we find it unnecessary to discuss whether the two problems are so different in character that improvements made in the construction of front teeth are not to be regarded as proper references upon questions relating to the construction of back teeth.

There are two claims in issue, which read as follows:

"1. An artificial tooth cusp having a flat base ground at an angle divergent to the plane of the masticating cusp and having a longitudinal recess therein arranged at an angle to the base of the cusp and a slot of less diameter than the recess opening the latter perpendicularly to the plane of grinding to a point near the lingual termination of the plane of grinding.

"2. An artificial tooth cusp having a flat base at an angle divergent to the plane of the masticating cusp from the lingual aspect of the tooth, meeting a second plane in a line parallel to its lingual aspect, a tubular recess of one standard size, perpendicular to said flat base and centrally disposed therein, a slot of less diameter than the recess opening from the recess vertically to the flat surface to a point near the lingual surface of the cusp."

The first claim, which is the broader one, embodies the following elements:

(1) A flat base located in a plane divergent to the plane of the masticating surface of the tooth; (2) a recess running lengthwise of the tooth and located in the flat base, the recess being at an angle to that base; (3) a slot of less diameter than the recess opening into the latter perpendicularly to the base and extending from the recess across the plane of the base to a point near the lingual termination of that base.

The second claim embodies all the elements of the first and has in addition a second plane or base with which the flat base called for in the first claim meets in a line parallel to the lingual aspect of the tooth. The recess is made tubular in shape, is centrally disposed in the flat base, and is perpendicular thereto.

An artificial tooth having a flat base, or having a flat base meeting a second plane in a line parallel to its lingual aspect, is old in the art. Mitchell patent, No. 770,768, September 27, 1904. An artificial tooth having a flat base, or flat base and a second plane, and provided with attaching means in the shape of a recess running lengthwise of the tooth and at an angle to and located in the flat base, is old. See Mitchell patent, supra. And an artificial tooth so constructed and provided with a recess, and having a slot of a less diameter than the recess opening into the latter perpendicularly to the

base and extending from the recess across the base to a point near the lingual termination of that base, is also old. Evslin, No. 907,326, applied for April 23, 1908, issued December 22, 1908. The artificial tooth described by Evslin has a flat base divergent to the plane of the masticating surface of the tooth, in which is located a recess running lengthwise of the tooth, the recess being at an angle to the base and said base contains a slot opening into and of less diameter than the recess, rising perpendicularly to the base and extending from the recess across the plane of the base to a point near its lingual termination, and we think that it anticipates the plaintiff's device.

[1] The Evslin patent was issued about a year and a half before the patent to Steele was applied for, and, this being so, the presumption is that it anticipates the plaintiff's patent and casts upon it the burden of showing that its device was not only conceived, but represented in some physical form, prior to the date of the Evslin application. Symington Co. v. National Castings Co., 250 U. S. 383, 385, 39 Sup. Ct. 542, 63 L. Ed. 1045. We think the plaintiff has failed to sustain this burden.

In Emerson & Norris Co. v. Simpson Bros. Corporation, 202 Fed. 747, 750, 121 C. C. A. 113, 116, which was a case involving the identity of structures as between an alleged anticipatory structure and a patented one, the court, in considering the nature and character of proof necessary to support the alleged anticipation, said:

"In cases like the present, it is necessary that the anticipations should be supported, not merely by the testimony of one or numerous witnesses relating to matters many years previous, but by concrete, visible, contemporaneous proofs which speak for themselves."

And, after pointing out the difficulties encountered in questions of this character, the court further said:

"The main difficulty is with reference to cases where it is undertaken by parol evidence to prove the precise characteristics of the alleged anticipatory matter, as is the fact here, and as was the fact in Greenwood v. Dover, 194 Fed. 91, 114 C. C. A. 169, decided by us on December 12, 1911. There, as against an order of the Court of Appeals for the District of Columbia, we stood in the same class as against the finding of the Commissioner in this case, and other cases involving the issue of patents. * * *

"The result of all these cases is that, with reference to questions of the class which we have here, namely, the identity of structure as between what is patented and what is alleged to have anticipated it, something more than oral testimony, even of the highest character, is required where there has been a considerable lapse of time."

The same character of question was involved in National Malleable Casting Co. v. T. H. Symington Co., 230 Fed. 821, 827, 145 C. C. A. 131, decided by this court February 3, 1916. In that case the defendant contended that the plaintiff's patent was anticipated, so far as the construction of a certain element was concerned, by a patent applied for by one Emerick after the plaintiff's patent had issued, and introduced parol testimony in support of the same. But as the evidence rested in parol, and 15 years had elapsed between the time the proof was offered and the occurrence of the matter in question, it was held that it was insufficient. This case was taken on certiorari to the Supreme Court, together with a case from the Seventh

Circuit involving the same question and relating to the same patents; the decision in the Seventh Circuit having been contrary to the one here. The Supreme Court (Symington Co. v. National Castings Co., 250 U. S. 383, 39 Sup. Ct. 542, 63 L. Ed. 1045, sustained the decision of this court. It was there said:

"This court has pointed out that oral testimony tending to show prior invention as against existing letters patent is, in the absence of models, drawings or kindred evidence, open to grave suspicion; particularly if the testimony be taken after the lapse of years from the time of the alleged invention. Deering v. Winona Harvester Works, 155 U. S. 286, 300. And it has said: 'A conception of the mind is not an invention until represented in some physical form, and unsuccessful experiments or projects, abandoned by the inventor, are equally destitute of that character.' Clark Thread Co. v. Willimantic Linen Co., 140 U. S. 481, 489."

In the case now before us the plaintiff offered oral proof to show that Steele conceived the device for which he received a patent in the latter days of 1907 or early in 1908. There was also evidence that the plaintiff and Steele took up the question of the manufacture of a saddleback tooth with the Pennsylvania Dental Manufacturing Company, and a letter was introduced from that company, dated January 3, 1908, stating:

"Under separate cover we send you samples, both burned and unburned, of new saddleback bicuspid mold."

[2, 3] But no tooth, mold, drawing, or evidence of like character was introduced disclosing the character of the structure which the parties had under consideration at that time. The elements entering into the construction of the tooth from which a comparison might be made were left wholly to oral testimony given after the lapse of more than 14 years and, such being the case, we regard it as inadequate.

In view of the conclusion reached, we do not regard it necessary to consider the other questions raised.

The decree of the District Court is affirmed, with costs to the appellee.