## STROMBERG–CARLSON TELEPHONE MFG. CO. v. AMERICAN ELECTRIC TELEPHONE CO. et al.

### (Circuit Court of Appeals, Seventh Circuit. January 5, 1904.)

### No. 1,005.

**1. PATENTS—INFRINGEMENT—TELEPHONE TRANSMITTERS.**
The Stromberg and Carlson patent, No. 580,434, for an improvement in telephone transmitters, construed, and *held* not anticipated and valid; also infringed as to claims 1, 5, 6, and 7.

Appeal from the Circuit Court of the United States for the Northern Division of the Northern District of Illinois.

Appellant failed in its suit to hold appellees for infringement of letters patent No. 580,434, April 13, 1893, to Stromberg and Carlson, for an improvement in telephone transmitters.

The specification and the claims relied on are as follows: "Our invention relates to a telephone transmitter, our object being to provide an improved form of transmitter of the granular-carbon type which can be manufactured at small cost, and which will effectively maintain the granular carbon in a separated and sensitive condition.

"In accordance with our invention, we mount upon the rear face of the diaphragm a sheet containing fine openings or meshes, preferably wire gauze, against which the granular carbon rests, and by means of which it is separated and kept in a divided condition. Likewise, upon the stationary electrode is provided a sheet of gauze against which the granular carbon rests. In an intermediate position between is placed a gauze sheet, the openings in which are quite coarse, permitting the passage of the granules of carbon, thus constantly agitating the granules, as the diaphragm vibrates, to prevent packing, and to maintain the granules in a separated and highly sensitive condition.

"We have illustrated our invention in the accompanying drawings, in which: "Figure 1 is a sectional view of the transmitter. Fig. 2 is a view of the diaphragm. Figs. 3 and 4 are views of the coarse-mesh gauze. Figs. 5 and 6 are views of the sheet of gauze mounted upon the stationary electrode. Fig. 7 is a view of the separating ring. Figs. 8 and 9 are views of the ring which holds the gauze in place.

"Like letters refer to like parts in the several figures.

"Upon the rear face of the diaphragm, a, is mounted the sheet a' of wire gauze or similar material, provided with fine meshes or openings. Against the face of the stationary electrode, b, rests a sheet, b', of wire gauze having fine meshes, and in front of the sheet b' rests the sheet c of wire gauze, having meshes of considerable size to permit the passage of the granules of carbon through the openings. Between the sheets, b' and c, is interposed a ring, d, and the sheet c is provided with a rim, c', which fits over the electrode, b, and is surrounded by a ring, e, which clamps the rim of the sheet, c, in position. The ring, e, carries a flange, e', upon which is mounted a ring, f, of plush, the soft fibers of which rest against the sheet of gauze, a', upon the diaphragm, and prevent the escape of the carbon granules. The carbon granules rest against the sheets of fine gauze upon the diaphragm and the stationary electrode, and the irregularities of the surfaces agitate the granules as the diaphragm is vibrated, thus preventing the granules from packing, and maintaining the same in a highly sensitive condition. As the diaphragm vibrates the granules are caused to pass through the coarse openings of the sheet c, thus further assisting in dividing the granules and preventing packing. The sheets b' and c are electrically connected with the stationary electrode, while the sheet a' is electrically connected with the diaphragm, and as the granules are forced against the gauze sheets a more perfect electrical contact is secured than when pressed against a flat surface.

"Having described our invention, what we claim as new, and desire to secure by letters patent, is:

"(1) In a telephone transmitter, the combination with the diaphragm of the sheet of gauze mounted upon the rear face thereof, the stationary electrode, the sheet of gauze mounted upon the face thereof, the sheet of coarse gauze, the ring separating the same from the sheet mounted upon the electrode, said sheet of coarse gauze having a rim encircling said electrode, a ring clamping said rim to the electrode and provided with a flange, and a ring of plush or similar material between said flange and the diaphragm, substantially as described."

"(5) In a telephone transmitter, the combination, with a diaphragm, of a sheet of conducting material provided with fine openings or meshes mounted upon the rear face thereof, and granular carbon resting in contact with said sheet, whereby the granules engage the meshes of the sheet to effect a good electric contact, and the granules are agitated to prevent packing, substantially as described.

"(6) In a telephone transmitter, the combination, with a diaphragm, of a sheet of conducting material provided with fine openings or meshes mounted upon the rear face thereof, a sheet of conducting material provided with fine openings or meshes mounted opposite the sheet upon said diaphragm, and granular carbon between said sheets, whereby the granules are agitated to prevent packing, substantially as described.

"(7) In a telephone transmitter, the combination, with a diaphragm, of a sheet of conducting material provided with fine openings or meshes mounted upon the rear face thereof, a stationary sheet of conducting material provided with fine openings or meshes, granular carbon between said sheets, and a sheet of material having openings or meshes, and situated between said first-mentioned sheets, substantially as described."

As illustrative of the prior art, appellees exhibited the following patents: 314,312, March 24, 1885, Blake; 335,364, February 2, 1886, Keller and Lyon; 350,772, October 12, 1886, Roberts; 357,452, February 8, 1887, Blake; 380,426, April 3, 1888, Farmer; 380,427, April 3, 1888, Farmer; 380,752, April 10, 1888, Farnham; 395,476, January 1, 1889, Blake; 433,981, August 12, 1890, Davis; 480,656, August 9, 1892, Christy; 489,990, January 17, 1893, Scribner; 517,564, April 3, 1894, Deckert; 527,214, October 9, 1894, McCoubray; 545,922, September 10, 1895, Stromberg and Carlson; 548,748, October 29, 1895, Ericsson; 563,395, July 7, 1896, Moore; 566,416, August 25, 1896, Schwarze; 575,896, January 26, 1897, Kotyra; 584,868, June 22, 1897, Gent, Staveley, and Parsons.

Other facts are stated in the opinion.

Charles A. Brown, for appellant.
Charles C. Bulkley, for appellees.

Before JENKINS, GROSSCUP, and BAKER, Circuit Judges.

BAKER, Circuit Judge (after stating the facts as above). The transmitter is that part of the telephone into which one speaks. The sound waves vibrate a diaphragm. In the class of transmitters of which we treat, the electric current passes from the diaphragm which constitutes one electrode and one wall of a chamber, through a confined mass of finely granulated carbon, to the stationary rear wall of the chamber, which is the other electrode, and thence upon the wire. In accordance with the compression or relaxation of the carbon granules by the diaphragm's vibrations, the current finds less or greater resistance in flowing between the electrodes. The variations of resistance cause undulations in the current. The ideal condition, we suppose, is that in which the compression and relaxation of the carbon granules strictly follow the diaphragm's vibrations, and thus produce undulations of the current which correspond exactly to the modulations of the voice, and

127 F.—45

which may therefore cause, by means of the receiver at the end of the line, a complete reproduction of the original sound waves. But it was found at once that the carbon granules tended to pack. The packing disturbed the mechanical correspondence between the vibrations of the diaphragm and the motions of the carbon granules; this disturbance diminished the contact between the granules and the electrodes, and caused an undue and improper resistance in the electric current; and this resistance in turn developed a heat that tended to fuse the granules and aggravate the packing. For more than a dozen years prior to the patent in suit, inventors had been giving their attention to these difficulties.

It is preferable that the diaphragm be in a vertical position, for thus the sound waves impinge upon it directly. If the diaphragm be horizontal, the sound waves, to strike it, must be led in a tube around an angle. It is also preferable that the opposing electrode be stationary, for, to the extent that it is elastic or movable with the vibrations of the diaphragm, the degree of variation in the compression and relaxation of the carbon granules is diminished. These two desirable features were retained by Stromberg and Carlson in their attack upon the difficulties named.

Their transmitter, which the record shows is a pronounced success, and came at once into a large demand and use, overcomes the difficulties in this way: Upon the rear face of the vertical diaphragm, which is the front electrode, they mount a sheet of conducting material provided with fine openings or meshes, "preferably wire gauze." In the fine openings the finely granulated carbon becomes inmeshed or entangled. That is, if the comminuted carbon be pressed against the mesh, in the fine openings granules would likely become entangled or wedged, so that if the mesh were held face downward the wedged particles would not fall out. A like mesh is provided upon the face of the rear electrode, which is stationary. The circumferential wall of the carbon chamber is a ring of plush. Between the electrodes, parallel therewith and about equidistant therefrom, is a partition of wire gauze with larger openings through which the carbon granules may pass. This partition is attached to, and rigidly held in its place by, the stationary electrode. The chamber is filled with carbon granules. As the diaphragm moves inward, the granules get the full benefit of the compression, for the rear electrode or wall is solid and stationary. As the diaphragm retracts and moves outward, the tendency of the granules to pack and settle down is met by the separating and supporting actions of the meshes on the electrodes and of the openings in the partition. The elasticity of the plush ring also contributes to the result by giving a somewhat bellows-like action to the chamber. Inasmuch as the vibrations of the diaphragm are exceedingly rapid, it is found that these means keep the granules in a separate and sensitive condition. And, with that condition of the granules, the conducting material of the meshes affords a good electrical connection between the granules and the electrodes. The result, according to the record before us, is that appellant's transmitters remain indefinitely as good as new.

The record shows various prior efforts to improve the original transmitter of the granular-carbon type. Some (Gent, Staveley, and Parsons, for instance) tried the effect of a gradual, automatic rotation of the transmitter. This is a conception utterly foreign to that of Stromberg and Carlson. McCoubray and others attached the carbon chamber to the diaphragm so that the vibrations thereof would shake the entire chamber and its contents. This form of transmitter depends upon the agitation of the granules, as a mass, to produce the variations of resistance in the current; and it is evident that the devisers thereof evaded one of the conditions of the problem that Stromberg and Carlson faced and solved, namely, the securing of a separate and sensitive condition of the granules while retaining that greatest possible range of compression and relaxation of the granules which comes from chambering them between the vibrating diaphragm, as the front electrode, and a solid, fixed wall, as the rear electrode. Others (Blake, Keller and Lyon, Roberts, Farnham, Davis, Christy, Scribner) proved the difficulty of the full problem by eliminating another·of the desirable features, namely, the vertical diaphragm. In the horizontal transmitter the granules cannot escape contact with, and an even distribution over the surface of, the bottom electrode, and thus a part of the difficulties is met by the change of position. But, on the other hand, the packing and settling down of the granules effect a complete separation from the upper wall of the chamber. Davis employed spikes to reach into the receding carbon, stir it up, and preserve contact. Farnham put the diaphragm on top, buried the other electrode in the carbon, and, to preserve contact with the diaphragm, relied upon an elastic and extensible bottom. Blake and others placed the diaphragm at the bottom, and thus secured the action of gravity and the diaphragm's vibrations in agitating the granules. Recognizing that contact could not be maintained with the upper wall, they devised various forms of pendent electrodes. Blake used a wire gauze buried in the carbon. The gauze had openings through which the granules could pass. It is manifest that this screen would not afford a very solid face for the diaphragm to compress the granules against. Roberts, and Keller and Lyon, exhibited thicker forms of pendent electrodes with fewer openings. Scribner, after stating in his specification that the sieve and other preceding forms had proven unsatisfactory, claimed that sufficient compression of the granules could be secured by using a pendent electrode with vanes. Obviously neither the screen nor any other form of pendent electrode was called upon to perform the function of the intermediate partition between the vertical diaphragm and the solid rear electrode of the patent in suit. In these horizontal transmitters, the faces of the electrodes display various departures from a smooth, even surface; but we have not stated these features, for the reason that appellees agree that the strongest examples of the prior ·art with respect to the "roughening," as they call it, of the faces of the electrodes, are exhibited in the remaining references. These pertain to vertical transmitters. Deckert shows a rear electrode the surface of which is covered with pyramids formed by cutting V-shaped grooves at right angles in the face of the electrode. These pryamids are large in comparison

with the size of the carbon granules. Ericsson's drawings indicate that a few pointed projections were made on the inner surface of the diaphragm, and that concentric waves were cut in the rear electrode. The distance between the pointed projections, and likewise between the crests of the waves, is great as compared with the size of the granules. On the inner surface of Moore's diaphragm is a sheet of conducting material provided with a series of wavelike projections, eight in number; and in the real electrode are cut recesses the purpose of which "is that in filling in the powdered material it may enter in these recesses, and therefore, when the device is turned up on its side, by falling out of said recesses into the space between the face of the solid carbon and the diaphragm, it will furnish a sufficient quantity to fill said space well without requiring such care and exactness before adjustment, and yet will leave the powdered material somewhat loose, that it may not pack between the parts." None of these electrode surfaces conveys a hint of the desirability of having a sheet of conducting material provided with fine openings in which the fine granules would become inmeshed. The prior art, as we view it, fails to show a combination that foreshadowed the concept of any of the claims in suit, or the equivalent of an intermediate perforated partition between a vibrating and a fixed electrode, or an electrode surface provided with fine openings or meshes. It follows, without further elaboration, that in our judgment the claims are valid, and not to be narrowed to less than the natural import of the words employed.

On the inner surface of the diaphragm of their transmitter appellees paste fine carbon granules. This forms a sheet of conducting material provided with fine openings, mounted upon the rear face of the diaphragm, designed and able to inmesh the fine granules within the chamber. In the solid electrode they cut fine concentric openings with square edges. This surface presents fine openings, designed and able to inmesh the fine granules within the chamber. The fact that the mesh is cut out of the surface of the electrode, instead of being fashioned independently and then attached, we regard as immaterial. Their intermediate partition is made of sheet metal, with perforations through which the granules may pass. The appropriation of these essentials establishes infringement of claims 5, 6, and 7. In assembling their transmitter appellees have avoided making a Chinese copy of all the coupling members mentioned in claim 1; but they have every part in substance, and the changes seem to us to have been designed as evasions.

Appellees claim that, pending this suit, they have ceased to make the transmitter complained of; but they do not exhibit what further changes they have made, they give no assurances for the future, and throughout this litigation they have denied appellant's rights. There is no reason why an injunction should not issue.

The decree is reversed, with the direction to enter a decree in appellant's favor for an injunction and an accounting.