## INTERNATIONAL TELEPHONE MFG. CO. v. KELLOGG SWITCH BOARD & SUPPLY CO.

(Circuit Court of Appeals, Seventh Circuit.    April 13, 1909.    Rehearing Denied May 28, 1909.)

### No. 1,480.

1. PATENTS (§ 75*)—PRIOR PUBLIC USE—EXPERIMENTAL USE.

The use of a telephone transmitter by the inventor for the purpose of determining its efficiency only, although known to others, was not a public use which invalidated a later patent.

[Ed. Note.—For other cases, see Patents, Cent. Dig. § 93; Dec. Dig. § 75.*

Priority and continuance of public use of invention as affecting patentability, see note to Eastman v. Mayor, etc., of City of New York, 69 C. C. A. 646.]

2. PATENTS (§ 83*)—ABANDONMENT—DELAY IN APPLICATION.

The fact that the inventor of a device did not apply for a patent until six years after it had been perfected, and successfully tested, did not operate as an abandonment or dedication to the public, in the absence of proof of anything indicating such an intention, such as a public use or publication.

[Ed. Note.—For other cases, see Patents, Cent. Dig. § 108; Dec. Dig. § 83.*

Abandonment of invention, see note to Hayes-Young Tie Plate Co. v. St. Louis Transit Co., 70 C. C. A. 6.]

3. PATENTS (§ 83*)—DELAY IN APPLICATION—ESTOPPEL.

Mere delay in applying for a patent after an invention has been made does not operate as an equitable estoppel which defeats the right of the inventor to a patent in favor of another, where he was the first true inventor and, notwithstanding the delay, was the first to apply for a patent, and to make public and market his invention.

[Ed. Note.—For other cases, see Patents, Cent. Dig. § 108; Dec. Dig. § 83.*]

4. PATENTS (§ 328*)—VALIDITY AND INFRINGEMENT—TELEPHONE TRANSMITTER.

The Dean patent, No. 687,499, for a telephone transmitter, although a combination of old elements, was not anticipated and discloses invention. Also, held infringed.

[Ed. Note.—For other cases, see Patents, Dec. Dig. § 328.*]

Appeal from the Circuit Court of the United States for the Eastern Division of the Northern District of Illinois.

This appeal is from a decree holding that claims 1, 2, 8, 10, 11, 13, 15, 16, 17, and 18 of patent No. 687.499, November 26, 1901, to Dean, for a telephone-transmitter, are valid and infringed. Dean's general statement of invention and the claims in suit read as follows:

"My invention relates to a telephone-transmitter of the granular type, in which a body of granular carbon or similar material is interposed between two electrodes adapted to partake of relative movement to vary the resistance between the electrodes.

---

"It is the object of my invention to provide a telephone of this type which will be simple and compact in structure and which will effectively prevent the 'packing' of the granules, thereby overcoming an objection which is incident to most of the granular telephones as commonly constructed heretofore.

"In accordance with my invention I provide a suitable diaphragm adapted to be vibrated by the vocal organs of the speaker; the diaphragm carrying a suitable recess or chamber for the granules, in which chamber is located one of the electrodes of the telephone. A supplemental diaphragm is associated with the main diaphragm and peripherally attached thereto, the second electrode of the microphone being associated with said supplemental diaphragm in an intraperipheral position; this is, associated with the supplemental diaphragm within the periphery thereof and preferably at the center of the supplemental diaphragm. The supplemental diaphragm co-operates in maintaining the granules within the chamber, and the electrode associated therewith is mounted in any suitable manner, so that as the main diaphragm vibrates the electrode will partake of relative movement to vary the resistance of the microphone. I preferably support the electrode which is associated with the supplemental diaphragm upon a rigid abutment or support, as I find this structure to give the best results, although the employment of a rigid abutment or support is not essential to the operation of the telephone."

"1. In a telephone-transmitter, the combination with a suitable diaphragm, of a chamber for the granules carried thereon, an electrode within said chamber and moving with said diaphragm, a supplemental diaphragm peripherally secured to said main diaphragm, and a second electrode associated with said supplemental diaphragm in an intraperipheral position, substantially as described.

"2. In a telephone-transmitter, the combination with a suitable diaphragm, of a chamber for the granules carried thereon, an electrode within said chamber and partaking of the movement of said diaphragm, a supplemental diaphragm peripherally connected with said diaphragm, a second electrode associated with said supplemental diaphragm in an intraperipheral position, and an abutment for said second electrode mounted in a stationary position, substantially as described."

"8. In a telephone-transmitter, the combination with a suitable sound-receiving diaphragm carrying a laterally-deflected chamber for the granules, of an electrode within said chamber and moving with said diaphragm, a supplemental diaphragm adapted to close said chamber, and a second electrode associated with said supplemental diaphragm in an intraperipheral position, substantially as described."

"10. In a telephone-transmitter, the combination with a diaphragm having a chamber for the granules carried thereon, of a supplemental diaphragm peripherally secured to said main diaphragm, a block fitting against the outer face of said supplemental diaphragm, a plate fitting against the inner face of said diaphragm, and means to clamp said plate and block together upon the diaphragm, substantially as described.

"11. In a telephone-transmitter, the combination with a main diaphragm, a chamber or recess carried thereby, a supplemental diaphragm peripherally secured to said main diaphragm, a block pressing against the outer face of said supplemental diaphragm, a plate similarly located with reference to the inner face of the supplemental diaphragm and having a shank extending through a bore in said block, means to secure the shank so as to clamp the plate and block together upon the said diaphragm, and a support for the block, substantially as described."

"13. The combination with a vibratory member forming a chamber, of an electrode adapted to vibrate therewith, a supplemental member to close said chamber, a second electrode associated with said supplemental member and adapted to be rigidly mounted and comminuted conducting material within said chamber, substantially as described."

"15. In a telephone-transmitter, the combination with a diaphragm, a recess or chamber carried thereby, a supplemental diaphragm, a block secured to the supplemental diaphragm, a support for the block, and means to secure

the block in its support in any position, whereby the block may be adjusted in its support by the vibration of the diaphragm and then secured in adjusted position, substantially as described.

"16. In a telephone-transmitter, the combination with a suitable sound-receiving diaphragm, of a chamber for the granules carried thereon, an electrode within said chamber and moving with said diaphragm, a supplemental diaphragm adapted to close said chamber, and a second electrode associated with said supplemental diaphragm in an intraperipheral position, substantially as described.

"17. In a telephone-transmitter, the combination with a suitable diaphragm, of a chamber for the granules carried thereon, an electrode within said chamber and moving with said diaphragm, a supplemental diaphragm having its periphery secured to the edge of the chamber, and a second electrode associated with said supplemental diaphragm in an intraperipheral position, substantially as described.

"18. In a telephone-transmitter, the combination with a diaphragm having a laterally-deflected chamber thereon, of an electrode in said chamber and movable therewith, a supplemental member, a second electrode associated therewith, said supplemental member being adapted to close said chamber and permit the free relative vibration of said electrodes, and comminuted conducting material within said chamber, substantially as described."

The record contains the following patent exhibits:

No. 213,283, March 18, 1879, W. Gillett; No. 218,582, August 12, 1879, S. H. Short; No. 225,790, March 23, 1880, E. Berliner; No. 232,705, September 28, 1880, W. Gillett; No. 240,416, April 19, 1881, S. D. Houpt; No. 257,610, May 9, 1882, Prosser & Freeman; No. 285,102, September 18, 1883, E. Berliner; No. 288,017, November 6, 1883, N. Clay; No. 291,866, January 15, 1884, E. Berliner; No. 330,879, November 24, 1885, J. Emmner, Jr.; No. 335,364, February 2, 1886, Keller & Lyon; No. 344,514, June 29, 1886, E. Berliner; No. 350,772, October 12, 1886, G. L. Roberts; No. 354,241, December 14, 1886, A. W. Rose; No. 356,689, January 25, 1887, E. H. Johnson; No. 369,376, September 6, 1887, F. C. Watkins; No. 375,862, January 3, 1888, V. M. Berthold; No. 386,380, July 17, 1888, C. W. Brown; No. 485,311, November 1, 1892, A. C. White; No. 513,305, January 23, 1894, F. R. Colvin; No. 518,263, April 17, 1894, C. Milde; No. 521,220, June 12, 1894, W. L. Richards; No. 521,325, June 12, 1894, J. B. Smith; No. 540,781, June 11, 1895, D. Drawbaugh; No. 545,416, August 27, 1895, G. F. Shaver; No. 557,588, April 7, 1896, W. C. & J. M. Lockwood; No. 558,313, April 14, 1896, A. W. Rose; No. 563,935, July 14, 1896, H. A. Martin; No. 567,077, September 1, 1896, N. L. Burchell; No. 573,356, December 15, 1896, L. W. Pullen; No. 576,551, February 9, 1897, M. E. & E. C. Clark; No. 580,434, April 13, 1897, Stromberg & Carlson; No. 596,834, January 4, 1898, Spencer & Keyes; No. 609,877, August 30, 1898, A. C. Cousens; No. 678,972, July 23, 1898, J. G. Nolen; No. 764,055, July 5, 1904, D. C. Jackson; British patent, No. 22,255, of 1891, A. A. C. Swinton; British patent, No. 1,487, of 1896, P. Charollois; British patent, No. 12,349, of 1898, Siemens Brothers & Co.; British patent, No. 27,335, of 1898, P. M. Justice; and German patent, No. 72,077, of 1893, B. Munsberg.

For opinion below, see 158 Fed. 104.

Josiah McRoberts, for appellant.

Robert S. Taylor, W. Clyde Jones, and Robert Lewis Ames, for appellee.

Before GROSSCUP, BAKER, and SEAMAN, Circuit Judges.

BAKER, Circuit Judge (after stating the facts as above). Forty odd reference patents were not needed to prove that Dean was not a pioneer in the telephonic art, that he did not originate the granular-carbon type of transmitter, and that he was not the first to provide a means for preventing the packing of the granules. So much he ex-

plicitly admitted in his specification; but at the same time he asserted that his "simple, compact and effective" structure was new and useful. Its utility, its high degree of effectiveness, its commercial success, are unquestioned facts. The novelty of none of the claims is gainsaid by any single prior patent or structure; but collectively the references establish that all of the elements, broadly considered, which Dean used in making up his combination, were old and were commonly used in transmitter construction. The question is whether the production of the new and useful combination required the exercise of invention—whether the idea embodied therein was obviously taught by the prior art.

Dean's application confirms his testimony that he was familiar with the White transmitter (patent No. 485,311), and that he considered it the best form then in use, but that the carbon granules therein were too liable to pack. In the White transmitter the electrodes are smooth; the front electrode is attached to the vertical diaphragm against which the sound waves strike; the rear electrode is mounted in the bottom of a substantial chambered block which is rigidly attached to the transmitter case; a supplemental diaphragm of mica or similar material is fastened at its center to the front electrode and at its periphery to the circumferential edge of the heavy chambered block; the space between the faces of the electrodes and between their edges and the wall of the chamber is filled with carbon granules. The variations in the resistance to the current are due wholly to the compression and relaxation of the granules between the vibrating and the stationary electrodes. The carbon chamber is sealed, and so moisture as a cause of packing is eliminated. There is an overflow space around the edges of the electrodes, thus obviating the fusion that might come from heat expansion of granules within confined limits; but the continual tamping of the front electrode upon the granular mass within the rigidly held chamber remained in the White as a known cause of packing. In the Dean structure. with its vertical diaphragm and smooth electrodes, its light-weight chamber carried on the diaphragm, its front electrode attached to the diaphragm within the chamber, its rear electrode upon a rigid post extending within the chamber, its supplemental diaphragm of mica attached at its periphery to the circumferential edge of the chamber and at its center to the rigid post and forming a tight and flexible rear wall of the chamber, its space for granules between the faces of the smooth electrodes and its overflow space around the edges of the electrodes—not only were obtained the variations in current resistance due to the compression and relaxation of the granules between the vibrating and the stationary electrodes, but also the variations due to the inertia of the granules as the chamber played back and forth; and, further, not only were moisture and overheating done away with as causes of packing, but the only remaining cause, namely, the tamping of a stationary mass, was removed by keeping the mass in agitation. Now when Dean had thought out these new results and the way to attain them, it is true that the various elements of the novel and useful combination could be found here and there; but the concept of such a unitary structure was not obviously taught nor foreshadowed by anything in the prior art. Strom-

berg and Carlson (patent No. 580,134) prevented packing by the wedging and separating action of roughened electrodes, aided by elasticity of the plush circumferential wall. Stromberg-Carlson Tel. Mfg. Co. v. American Elec. Tel. Co., 127 Fed. 704, 62 C. C. A. 460. While the result, in the one particular, was of the same general character, the idea of means was totally different. Nothing, of course, was taught respecting the granular carbon type by the earlier transmitters (Short, Berliner, and others) in which the electrodes were in direct contact. The transmitters with horizontal diaphragms we deem inapposite for reasons stated in the Stromberg-Carlson Case. The "pillbox" class (Colvin and others) do not have the tamping action, the effect of which was one of the things in the White transmitter that Dean was aiming to remedy; and the absence of the tamping hardly suggests a cure. In the "piston and cylinder" type (Brown, Charollois, and others) in which one electrode is mounted at the bottom of a solid cylindrical granule chamber, and the other electrode is the piston head, having a felt or plush packing or washer, and either the cylinder or the piston is attached to the diaphragm, we trace no suggestion of means for attaining the results produced by Dean. In the Charollois structure, which was largely dwelt upon in argument, we find electrodes of the rough-face style and the space between fully and tightly filled with granules—no sealed chamber to exclude moisture, no overflow space to allow for heat expansion, no way suggested to break up tamped granules except by the wedging and separating action of the rough-face electrodes. To our view the White transmitter is the strongest reference. In a broad way it may be said on a comparison of the two transmitters that Dean simply reversed the position of White's sealed chamber with its smooth electrodes and overflow space, and that all the necessary structural alterations and adaptations were within the capacity of the skilled mechanic. But neither the White patent nor anything else exhibited in the prior art would have told the mechanic why the changes ought to be made. The mechanic in Dean had first to be informed by the inventor in Dean.

Infringement is clear. Appellant's mechanical joinder of parts which appellee makes integral does not avoid the identity of the transmitters.

Dean's application was filed in March, 1901, and the patent was granted in the following November. McCormick, inventor for appellant, testified that he made a transmitter embodying the principles of the Dean invention in September, 1900,; but he did nothing about it until some time after Dean had applied for a patent and also had successfully placed his transmitter upon the market. Thereafter McCormick filed an application for a patent, and appellant brought out its copy of the Dean transmitter. Appellee introduced proof tending to show that Dean had made the invention in 1895. Upon this state of things appellant bases several contentions.

Abandoned experiment: The very instrument, unaltered, that Dean constructed in 1895, was successfully used, after this suit was pending, in communication between Chicago and New York.

Public use more than two years prior to the application: Dean did

not sell or lease his completed device; he did not permit others to use it for telephone purposes; he did not so use it himself. He did, to the knowledge of others, couple it to a telephone line to see whether it would do what he hoped. He lost nothing by such a use. Elizabeth v. Pavement Co., 97 U. S. 126, 24 L. Ed. 1000.

Abandonment or dedication to the public: This contention centers on Dean's intent, and the burden was on appellant to prove very clearly that Dean meant to donate his invention to the public. Ide v. Trorlicht Co., 115 Fed. 144, 53 C. C. A. 341,· and cases there collated. Within the two years preceding the application there was no public sale or use and no publication under circumstances from which an inference of dedication might be drawn. And the positive evidence leaves no doubt that Dean intended to retain the invention as his own property until he could market it to his profit, as he did in 1901.

Equitable estoppel: Dean was the first and true inventor of the device in suit. There being no abandonment, no public use or sale, and no publication, within the terms of section 4886, Rev. St. (U. S. Comp. St. 1901, p. 3382), his right to the patent is not assailable on statutory grounds. So far as equities are concerned, Dean, in spite of his delay, was the first to put the device into commercial use and the first to apply for a patent. If, during Dean's suspension of activities, McCormick had either patented the device or brought it into public use without a patent, the public would have been indebted to McCormick for benefits conferred, and Dean might well be held estopped by his delay from claiming the public grant; but in our judgment neither reason nor authority sanctions an estoppel against the first and true inventor unless the later comer has cut in between and made the public his debtor by being the first to get to the patent office or the market. Kendall v. Winsor, 21 How. 328, 16 L. Ed. 165; Consolidated Fruit Jar Co. v. Wright, 94 U. S. 92, 24 L. Ed. 68; Savary v. Lauth, Fed. Cas. No. 12,389; White v. Allen, Fed. Cas. No. 17,535. The decision in Universal Adding Mach. Co. v. Comptograph Co., 146 Fed. 984, 77 C. C. A. 227, is to the same effect, when the general expressions are read, as they should be, in the light of the particular facts.

The decree is affirmed.