DUNCAN v. SHELLY.

(Court of Appeals of District of Columbia. Submitted January 12, 1920. Decided March 1, 1920.)

No. 1267.

1. PATENTS ⬅️183—KNOWLEDGE OF APPLICANT'S ASSIGNEE IMPUTED TO APPLICANT.

Where a patent will inure to the benefit of a party purchasing the rights of the applicant, its knowledge of a conflicting invention must be imputed to him, and its activity in filing the application is his activity.

2. PATENTS ⬅️90(3)—INVENTOR, JUNKING DEVICE AND DELAYING GIVING IT TO PUBLIC, LOST RIGHT TO PRIORITY.

Where an inventor, after reducing his invention to practice, junked his device and delayed for two years in taking steps to give it to the public, he lost his right to priority over another inventor, who in the meantime had reduced his invention to practice and applied for a patent.

3. PATENTS ⬅️87—ABANDONMENT OF INVENTION MAY BE INFERRED FROM CONDUCT.

While abandonment of an invention by the inventor must be sustained by convincing proof, if his conduct discloses an intention to pursue the matter no further, abandonment may be inferred.

4. PATENTS ⬅️87—EVIDENCE HELD TO SHOW ABANDONMENT OF INVENTION.

Evidence in an interference proceeding *held* to show that the delay of

the junior party in filing his application was not due to lack of funds, but to abandonment of the invention.

Appeal from Decision of Commissioner of Patents.

Interference proceeding in the Patent Office between Raymond Duncan and Samuel Shelly. From a decision awarding priority to Shelly, Duncan appeals. Reversed.

A. E. Dieterich, of Washington, D. C., and C. A. Dieterich, of New York City (William P. Jones, of New York City, on the brief), for appellant.

J. Edgar Bull, of New York City (Delos Holden and William A. Hardy, both of Orange, N. J., on the brief), for appellee.

VAN ORSDEL, Associate Justice. This appeal is from the decision of the Commissioner of Patents in an interference proceeding awarding priority of invention to appellee, Shelly.

The invention relates to a stop mechanism by means of which the turntable of a phonograph may be automatically stopped when the reproduction of sound from the record has been completed. It is unnecessary to consider the invention or the counts of the issue, since the appeal turns upon questions of law.

Appellant, Duncan, alleges conception of the invention in May, 1914, and reduction to practice in June, 1914. He filed his application for patent April 21, 1915. Appellee, Shelly, alleges conception in April, 1914, reduction to practice May 17, 1914, and a written description of the invention June 15, 1914. He filed his application April 5, 1916, and is, therefore, the junior party in this interference.

It appears that in May, 1914, Shelly produced an automatic stop for a phonograph, which was experimented with and proved to be operative. There is a division of opinion in the tribunals below as to whether it amounted to a reduction to practice of the present invention. But in our view of the case this is unimportant. After this May test appellee caused an application for a patent to be prepared, which was never filed. This device, the structure of which is not clearly disclosed, was not preserved. In regard to it appellee testified in answer to a question:

"No, sir; I did not intend to use these parts over again, because they were too bulky and clumsy. These parts were simply used to show that my theory or experiment was right."

The following question was then propounded:

"By 'no, sir,' as used in your last answer, you mean that you were not much concerned with what became of your original stop mechanism. Is that right?"

To which he answered:

"That is right."

It will be observed that it was at the time Shelly was experimenting with the invention that Duncan came into the field and with commendable promptness reduced his invention to practice and filed his application. On April 19, 1916, Duncan granted the Thos. A. Edison, Incorporated, a license upon a royalty basis to use the invention on its

phonographs. The device, however, had been under test in the experimental laboratory of the Edison Company since the summer of 1915, during which time negotiations were conducted leading up to the contract of the following April.

According to his own record, Shelly did nothing from June, 1914, until February, 1916, when he made a second machine, which was submitted to the Edison Company about February 18, 1916, and which was purchased outright by the Edison Company for the sum of $540 by contract dated March 9, 1916. He also agreed to execute any applications for patent which the Edison Company might prepare and have prepared.

[1] We think the assumption may be indulged that the purchase of the Shelly invention and the application for patent, which inures solely to the benefit of the Edison Company, inspired the completion of the royalty contract for the use of the Duncan device for the express purpose of defeating and suppressing it. The knowledge of the Duncan invention by the Edison Company must be imputed to Shelly. Hence the activity of the Edison Company in filing the application for the second or 1916 device is Shelly's activity. Aside from the abstract principle of law that in a case like the present the assignor and assignee must stand upon a level, it clearly appears from the record that the resurrection of the abandoned 1914 experiment by Shelly in the form of the 1916 device was inspired by the agents of the Edison Company.

[2] This, however, is not important, except in so far as it throws light upon Shelly's conduct, since, of course, the Edison Company must be held to have succeeded to whatever rights Shelly had, and the case must be determined solely from the standpoint of Shelly's right to prevail. We think, however, without determining the question of reduction to practice in 1914, Shelly, by his delay and conduct in junking the 1914 device, lost his right to assert priority over Duncan. This is in harmony with a long line of decisions in this court, which has been approved by the Circuit Court of Appeals in Curtain Supply Co. v. National Lock Washer Co. (C. C.) 174 Fed. 45, where the court said:

"It is the settled doctrine of the Court of Appeals for the District of Columbia that when an inventor perfects and reduces to practice an invention, and fails for an unreasonable period to take steps to give it to the public, and until some one else has independently invented and patented it, the earlier inventor forfeits his rights to a patent as against the later inventor."

The same rule applies, also, where a patent has not issued to the other party. Gordon v. Wentworth, 31 App. D. C. 150; Howard v. Bowes, 31 App. D. C. 619; Dreckschmidt v. Schaeffer, 46 App. D. C. 295; Brown v. Campbell, 41 App. D. C. 499.

[3] The intention of Shelly to abandon the invention, we think, is clear. It seems to have gone out of his mind until he was inspired into activity by the Edison Company, which was then in possession of knowledge of the Duncan invention. Abandonment in most instances can only be determined by inferences to be drawn from the conduct of the party against whom it is charged, and while it must be sustained

by convincing proof (Hubbard v. Berg, 40 App. D. C. 577, 581), if the conduct, as here, discloses an intention to pursue the matter no further, abandonment may be inferred.

[4] Some attempt has been made to account for Shelly's delay through his alleged inability to secure funds to file his application for patent. This defense totally fails. According to his own story he had the device constructed in 1914, when he had an application prepared. The attorney's fee was $30. This amount, together with the filing fee in the Patent Office, was the insurmountable obstacle for almost two years, and until the Edison Company came to the rescue. Shelly was a young man, single, with no one dependent upon him. He was employed most of the period in question, during which time it appears that he purchased a motorcycle and was paying for the same in monthly installments. His claim of inability through poverty to protect his rights by filing an application for patent is without merit.

The decision of the Commissioner of Patents is reversed, and the clerk is directed to certify these proceedings as by law required.

Reversed.